I'd just like to mention I have a walker, so I take a little bit more time. Take whatever time you need. I'd just like to mention I have a walker, so I take a little bit more time. Mr. Shelclist? Good morning. May it please the Court. My name is Rob Shelclist, and I represent the plaintiffs Appellants Galloway and Shost in this appeal. I'd like to reserve three minutes of my time, if I may. The district court's failure to answer the central question in this Consumer Protection Act case, namely whether opening an embedded loot box made to look and feel like a slot machine in an otherwise legal video game constituted illegal underage gambling, led the court to err in three ways. First, plaintiffs have pled acts, omissions, and practices as its theory of the case. The court never ruled on the practices prong. Instead, it looked only to the causation prong without defining what the violation or violations were under the Consumer Protection Act. We say that that should have been framed by a holding or factual findings with regard to this illegal gambling allegation that we made. Second, the district court erred in recasting plaintiffs' claims, only considering omissions and misrepresentations, to say that our causation theory was based upon reliance, even though the thrust of the evidence below and the allegations from the amended complaint forward said that they were deceived and misled. The court should have applied the standard announced by the court that causation is presumed in those instances. The court's third error was in the application of the heightened standard, assuming it was about illegal gambling. The problem with the court's logic is that if it announced, if Valve announced that illegal gambling was embedded in this game, it would have made it illegal for Valve to sell, illegal for the plaintiff's kids to play, and in most instances would have prevented the use of the parents' credit cards to charge these gambling winnings or losings to. Could you clarify for me what specifically is, so the first element of the CPA claim is an unfair or deceptive act or practice. What specifically is the act that you are claiming satisfies that element? So within an otherwise legal video game, a first shooter video game that 13-year-old kids and older can play, is a loot box feature which has the look and feel of a slot machine where the kids put money in and the wheels spin and something comes up that may have high value, may have low value, or something in between. It's a game of chance. There's no skill involved in what you receive. There's no thing that you receive that actually increases your ability to play the game, to level up and do anything else. We say that that is a practice which is illegal. It's gambling under the definition of the Washington Gambling Act, and that illegality supports the Consumer Protection Act claim here. So it's just having that in the game by itself is per se, in your view, an unfair or deceptive act? That's correct. I was going to just say, I'd be interested in your thoughts on the Hangman Ridge case and how that would apply in this circumstance. We believe that Hangman Ridge stands for the proposition that the court needs to define what the violation is before reaching a causation argument. And I think the case that the court cited and relied on, Young v. Toyota Motors, it's a Washington Supreme Court case from 2020, 196 Washington 2nd, 310, makes that point. The court cited the case but then ignores what happened in the case. Didn't Hangman Ridge require causation? It did require causation, but what causation was required is defined in the case the court cited, which was Young, and the causation begins with defining what the act is. So if you look at Young v. Toyota Motors, the first thing the Toyota Motors court did on page 996 was determine what happened and what the violation was. And in the Toyota Motors case, it was found to be a misrepresentation and nothing else violated the act. It then goes and continues on using that predicate definition of what the violation was to determine causation and reliance. And the test that it applies is the same test the court announces here, although the defendant claims it's the wrong standard, must establish that but for the defendant's unfair or deceptive act or practice, the plaintiff's injury would not have occurred. The defendant's action is the predicate to tie the damages or injury, and without that predicate act, you can't determine what the causation theory was and whether or not it's been sustained. If you look at Toyota on pages 996 and 997, it says there was no other substantial theory of causation other than reliance. So the court is taking that language and saying, well, if you plead reliance, you're stuck with reliance. Well, in the Young v. Toyota case, that made sense because the only violation was a misrepresentation. You had to rely on the misrepresentation. Here we have multiple theories of the illegality of the act and multiple theories as to why that violates the Consumer Protection Act. Specifically, with regard to the practices, does it offend public policy? We allege and prove that it did with expert evidence that was unrebutted and not challenged. Is it immoral, unethical, oppressive, and unscrupulous to bury a gambling game within an otherwise legal game? We provided evidence that it was. Does it cause substantial injury to consumers? We say that it does. And how exactly does it cause injury to your clients? Because it's injury in business or property, right?  I think in two ways, because it is their money that's being wagered, which otherwise would not be wagered. But your client is the parent. That's correct. And the parent... Did the parent use the Steam option? They did not. This is an online gaming platform. It's akin... But is there any evidence that the parent engaged in gaming, other than allowing the funds to buy into these other options? They did not engage in gaming. And when they finally figured out that they had been deceived, they stopped their kids from playing. There's kind of a missing element here that the children's claims have already gone to arbitration. Is that correct? Correct. So we're left solely with the parents. Correct. Correct. And the kids ask the parents for money, or deceive them, in the case of one of your clients. The parents basically make their credit card available, correct? Correct. But since they have no connection to the game, and their children didn't disclose at least how this was working, it seems to me there's really a fundamentally missing link in causation, no matter how you define the deceptive practice. We disagree, Your Honor, because we think the conduct of Valve is at issue here. And that's focused on one of the three disclosures the court said could have been made here, that there was illegal gambling embedded. To make that a disclosure does not cure the illegality. In fact, what it does is put obligations on Valve itself to make changes that would have prevented the kids from even being able to gamble in the first place. Don't take our word for it. Our experts put forth what has happened in other countries that began challenging these practices for Dutch and Belgian players. They can't even play the loot box. It's been disabled. In France, they came up with something called an X-ray, where you could look inside the loot box and see what you were going to win, purchase, before actually paying the money. Our theory is- Well, this is true. I mean, the Washington Attorney General could go after this practice, correct? They absolutely could. But the difficulty, I think, I'm having is the connection once at least removed from the players and the game, and that's the parents. So I read the- you say that the district court imposed a heightened causation standard, and I read that, in fact, the court did not do that. Well, the court said that because we pled reliance, that he was going to look at it from the aspect of reliance. When he got to the omissions piece, he then looked at the rebuttable presumption by saying because the parents hadn't read enough, hadn't played the game, hadn't done enough, there's nothing that could have been said that would have prevented this. But we're saying there is no case that either the district court or the defendant cites for the proposition that a disclosure of illegal activity will allow that activity to continue on. And it's the parent's obligation at that point to stop that activity. So let me ask you a question that I think is getting at maybe the same point that Judge McEwen was. Suppose a parent gives a child, you know, $20 and says, you know, go buy yourself some ice cream, right? And the kid goes to the ice cream shop, but the ice cream shop is a fraud, so they take his money and don't actually give him ice cream. Does the parent have a CPA claim against the ice cream shop? We believe in this instance there's a difference between cash, which is in the... Well, don't, don't, don't. Just, I mean, you can get to the difference in a moment, but just starting with that, in that case, does the parent have a claim? I do not believe that the parents have a claim when the cash is given to the children. Okay. We believe there is a claim here when the credit card is used, because as the expert testimony we put before the court shows, first, most credit card companies will not allow charges for gambling, period. Second, for those that do, you have to use know your customer and anti-fraud provisions. So the parents would have been asked for their social security number, their name, their account would have had to be used with that credit card. So the parent, so let's say the parent gives the kid a credit card. Kid is 16 and looks 19, or whatever the age is that you can purchase marijuana in Washington. Goes down, gets it, comes back. Does the parent have now a claim against the marijuana dispensary? I don't think that they do in that situation. What's the difference? The difference to me is that this is a platform that says gaming, that the kids have to give their age, age 13 or older, to play with their birth date, which they did. Get down at the marijuana dispensary, check. And then the charge itself has to be linked to the person's credit card. I don't know the Washington law with regard to dispensaries. If the person purchasing has to be the same person who uses the credit card. But with regard to gambling, under the anti-fraud provisions and know your customer provisions, that has to be done. There has to be a match. Do you want to reserve the rest of your time? Please, Your Honor. Okay. Mr. Skok? Good morning, Your Honor. May it please the court, Gavin Skok on behalf of Defendant Valve Corporation. This case has been long running and wide ranging, but the issue today is very narrow. That is the CPA causation element, and the causation question is not one of whether case opening is legal or illegal, because plaintiffs have not pled that their injury comes from illegality. Excuse me, Mr. Skok. Would you mind speaking a little louder for me? I'm sorry to ask for that, but I'm having difficulty hearing you. There we go. We'll try that. Is that better, Your Honor? Much better. All right. All right. I was saying the causation question is not one of illegality of case opening, because plaintiffs have not pled that their injury comes from illegality. If we look at their complaint and what they argued below, they plead their injury comes when they give money to their children that their children then choose to spend on case opening. So the causation question that Judge Robart had to answer was, what, if anything, did Valve do to cause these parents to give their children that money? It's a question he took up. It's a question he properly answered, and the correctness of his decision is shown by just three simple, undisputed facts. The first of which is, these parents were strangers to Valve. As Your Honor's question pointed out, they had never been to a Valve website, used Steam or the video game, never tried case opening, and so they never saw anything Valve said on any of those places about case opening. In fact, they would not have seen anything different or additional Valve said. The second thing is, these parents did not know that the money that they gave to their kids was being used for case opening, and they didn't intend for that use. The kids told them they wanted it for something else, then made their own choice. And the third undisputed fact that Judge Robart's opinion really rests on is, this case opening is not hidden. Anyone can make a free Steam account. That's part of the undisputed record. Anyone can try CSGO and use this case opening feature. And plaintiffs even allege that if you just try it out, it looks like a slot machine. These plaintiffs could have seen exactly what it is that they now claim Valve hid. These facts were undisputed at the district court. They're undisputed now. I think the biggest thing that we see in the briefing is a disagreement over the standard for proving causation. And it's a question of reliance. That's the way Judge Robart addressed it, because he was following the Washington Supreme Court's roadmap in Young versus Toyota North America, a decision from just a couple years ago, where the court acknowledges you don't always need to prove reliance on the CPA. We agree with that. But in Young, the court said, if you plead reliance is your causation theory, then you have to prove it. And in Young, the specific language the court looked at was the plaintiff claimed he had been induced to buy a vehicle by a deceptive advertisement. That's the same language, induced, that is in Plaintiff's Complaint in paragraphs 89 and 111. And 111 is actually the proximate cause allegation on their CPA claim, where they allege that Valve's actions and omissions induced them to provide money to their children. So Judge Robart gets it right by following that Young roadmap. I think where we disagree with plaintiffs is whether, once we look at this as a reliance case, whether Judge Robart properly applies the rebuttable presumption of reliance that the Washington Supreme Court adopted in Morris v. International Yogurt. I don't think there's a question that he did apply that presumption. It's on page 18 of his summary judgment order. He expressly says he's applying it in the first instance. Where we differ, though, with plaintiffs is Judge Robart then went on to analyze whether that presumption was rebutted. And the way he did that was, again, following what the Washington Supreme Court said in Morris. To determine whether the presumption is rebutted, you look at whether additional or different disclosure would have changed these plaintiffs' behavior. That's the test. And that goes back to the very first undisputed fact I mentioned. These plaintiffs were strangers to Valve. They didn't see anything on any Valve website or in the game. And so it didn't matter at that point what Valve said on any of those sites. It would not have changed their behavior. So counsel, I mean, a moment ago you quoted paragraph 111 from the complaint, and if the claim is conceptualized the way that that paragraph describes it and the way that you're describing it as a sort of a failure to disclose, then I think I understand what you're saying now and what Judge Robart said, and it makes a lot of sense. The failure to disclose couldn't have caused the injury if they wouldn't have seen any disclosure anyway. But there is also language in the complaint, looking at paragraph 114, and Mr. Shelquist referred to it today, that if the claim is conceptualized as it is just a per se violation to have this product or service that is illegal gambling, then the causal relationship to the injury seems much more straightforward. Like this is an illegal service, like our money got spent on it, but that was an injury because we spent money on it. So what's the answer to that? Yeah, so the way I would look at it is twofold. First, Judge Robart did consider that. I know there's been an argument that he did not. He actually did. It's page 18 of his summary judgment order. He says, quote, plaintiffs argue that Valve's actionable omissions include deceptively embedding a gambling feature in what otherwise appeared to be a typical first person shooter game. So that is something that he acknowledges is before him on summary judgment. And actually, if you were to look at page 37 of their opening appeal brief, their claim is described the same way, an omission about deceptively embedding a loot box feature. That's the way they put it. Judge Robart went on in the next page of his summary judgment order to rule on that and said the problem with this deceptive embedding theory is the same as a problem with all of their other omissions claims. It didn't matter what Valve said or what Valve did because it wouldn't have changed these plaintiffs' behavior. But I understood him to be saying not just that it was you deceptively embedded a gaming feature, but the fact that the gaming feature exists at all, whether it was hidden or open or whatever, like just per se, it is an unfair act to have this feature. And so why? And then the causation, as I said, seems more straightforward. So why is that? Why doesn't that work for them? Because causation tests whether these plaintiffs' injury is the result of something that Valve did or said. And the problem is just simply embedding case opening in CSGO doesn't do anything to these plaintiffs. As your Honor pointed out, they don't play the game. They don't interact with it. Case opening had been in the game before their children ever played it. Their injury, the way they plead it, is it occurs when we give money to our children and then the kids use it on case opening. They never would have been injured unless and until the kids do something different with the money they ask their parents for. But I understood the argument to be a little bit further and that is, excuse me, that if this is an illegal, if this is a gambling type embedding, then as with pornography and gambling, there's various screens on the internet where you have to check or provide documentation before you use the credit card. And had they done that, because in the plaintiff's view, this is an illegal gambling construct, then the parents would be injured because their credit card was being used without that screen. So one of the problems with that is none of that is in the record and there is no evidence that that was feasible, that that would have changed a single thing. Can we look at... The expert did testify to some of this in terms of what would be done if it were a gambling operation. Yes, but this is really a situation where I think you can look at it through a couple different lenses. But one is, who is the plaintiff to bring that claim? And certainly, as Your Honor pointed out, the Washington Attorney General could bring an enforcement action. There may be other people who can bring that. But can we, as a court sitting in a case in which the issue has been raised, in other words that this feature is gambling and a violation of Washington law, can we make that judgment here, notwithstanding the fact that the AG has not brought a case? I would say it is not necessary for this court to resolve whether case opening is gambling, because that wasn't the basis for Judge Robart's decision below. I'm happy to go into the reasons. But I believe it's their contention, is it not? Well, it is their contention that case opening is gambling. But again, the causation question is, what caused their injury? And what caused their injury was that choice to give money to their kids and the kids then using it on a particular thing. So that's why we go back and follow what Judge Robart did, and we test whether or not Valve did something that caused the parents to give their kids money. I'd like to draw an analogy to indoor billboard. So in 2008, the Washington Supreme Court adopted proximate cause as the standard for CPA claims in indoor billboard. And that case started with a plaintiff that said, there is a deceptive charge on my phone bill, and I paid it, therefore I've established causation. That's really a lot like their argument they're making right now. There is gambling in CSGO, we disagree, but that's their argument, and therefore I was Very similar to what was in indoor billboard. And the indoor billboard, Washington Supreme Court said, the fact that you merely pay a deceptive charge is not enough to establish causation. You have to go through proximate cause. And the Washington Supreme Court adopted the Washington Pattern Jury Instruction definition, which requires a cause that in a direct sequence, unbroken by an intervening cause, leads to the injury. That's the test that Judge Robart cited correctly in his lower court order on summary judgment. That's the test that we're trying to figure out here. So if we think about a direct sequence and no intervening cause, that's a real problem for plaintiffs with the theory about, can you base liability solely on gambling being in CSGO? We don't agree it is, but even if you start with that assumption, you still have to follow indoor billboard and apply that proximate cause definition and trace the causal chain from the parents to that alleged injury. And squarely in the middle of that is the children. If we look at the start, there's not a representation or omission by a valve that they can point to that they ever would have seen or be aware of. If we look at the middle of the chain, we see the children telling the parents they want money for one thing, using it for another. So that's a broken chain. That doesn't meet the test under indoor billboard, even if you start with the assumption they're now arguing you should, which is a case opening is illegal. We think Judge Robart got it right when he ruled on it down below that this is essentially just another species of an omissions claim, because that's really the only way these plaintiffs can bring that argument. So I'm going to ask you to accept a couple of assumptions I know you don't, but for purposes of the question, suppose it is illegal gambling, and suppose there were no arbitration clause. Could the children bring, the children who actually played the game, could they bring a CPA claim and just say, you know, we spent money on this product? It's illegal gambling. That's per se an unfair or deceptive act. The money we spent is an injury. And not only could they, but they already did. These kids, this claim is, this case has been here since 2016, and it started with kids and parents. A CPA claim has always been a part of it. We've litigated this. We've been to this court before, two different district courts, and two full arbitration hearings on the merits. Those arbitration hearings on the merits involved claims by both the children and the parents, and in both, the children presented evidence about case opening. So yes, Your Honor, that is a conceivable alternative. So if, you know, the fact that the plaintiff, you know, on his own decided, you know, knowing what the game was to play it, you know, doesn't break the chain of causation, and the plaintiff there still has a claim, why does the fact that the plaintiff's child was the one who made the decision to play the game with the plaintiff's money, like, it doesn't seem like that much of a causal leap in that case. So why is it different when it's the child? Well, because what we are testing is how direct of a connection there is, and is there an intervening cause. That's that proximate cause standard. And so I'll direct the court to the Kim versus budget rent-a-car Washington Supreme Court case we cite in the briefing, where on day one, a rental car company leaves keys in the ignition of a car. On day two, somebody steals it and hits a pedestrian who's injured and then sues. One of the claims that pedestrian makes is that you rental car company proximately caused my injury. And the Washington Supreme Court says, no, no, no, there is that piece in the middle. That's too attenuated of a chain. Even though, yes, the car never would have been stolen if you hadn't left the keys in the ignition, that's not enough to establish proximate cause. So it's a little bit like that here. The other thing I'd just direct the court to in my last 30 seconds here is, Judge Robart earlier in the case made a ruling as a matter of law that Valve owed these parents no duty of care. That was on dismissing plaintiff's negligence claim. He also ruled in that context that there was the injury to the parents was not foreseeable. He gave plaintiff's leave to amend. They did not. Plaintiffs did not appeal that ruling to this court. That is law of the case now. So we have not only plaintiffs that are a stranger to Valve as a matter of fact, they're unaware of it and don't know what their kids are doing, but also as a matter of law, we know Valve owes them no duty. Judge Robart got it right. Thank you. Thank you. We're glad that indoor billboard was mentioned because in that case, it followed hangman's ridge to your question, Judge O'Scanlan. And what they found was a fact issue, whether or not voluntary payment of a charge that was found to be deceptive, the causation had been established in that circumstance. So if you look at page 23, 170 Pacific 3rd, 23, they find a fact issue, which is exactly what we say this court should find. Second, the undisputed fact is actually disputed. The parents are not strangers to this transaction because it is their credit card that is on file. Their credit card, their name, their address, that's what's being billed here. The fact that they didn't play the game doesn't make them a stranger to Valve because it's captured in their own records. Third, the kids were given money, which was deposited on a gaming platform to play a game. Defendant is now trying to parse that to say, well, the parents should have given them or to what had been embedded, these loot boxes. But that's not what the parents were doing. In the Bao case, you're supposed to look at the parental or the plaintiff's expectations. In here, their expectation was a game is a game. They testified and understood that these were first shooter games, not gambling games. They understood that it was for kids 13 and older. And most importantly, the court never credits that when the parents found out, they stopped the action. So for summary judgment purposes, when they found out they had been deceived, they ended it. Finally, your honors, the fact that the Washington attorney general can bring this case is not dispositive of the fact that the issue is before this court or the district court and the legality can be prosecuted by private attorney generals, which we are indetermined by this court or the district court below. Thank you. Thank you. I thank both counsel for their helpful arguments this morning and the case is submitted.
judges: O'SCANNLAIN, McKEOWN, MILLER